IN DISTRICT COURT OF LINCOLN COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| **EARTH RESEARCH LABS, LLC, an**<br>**Oklahoma limited liability company, and**<br>**RODNEY ALEXANDER TOPKOV,** | ) ) ) | **FILED**<br><br>MAY 22 2023<br><br>CINDY KIRBY, COURT CLERK<br>LINCOLN COUNTY, OKLAHOMA |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | Case No. C S 23-75 |
| **THE STATE OF OKLAHOMA EX REL.**<br>**ALLAN GRUBB, DISTRICT ATTORNEY,**<br>**IN AND FOR LINCOLN COUNTY,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

## PETITION

The Plaintiffs' Earth Research Labs, LLC and Rodney Alexander Topkov, for their

Petition against the Defendant State of Oklahoma, and state as follows:

### I.    PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Earth Resources Labs ("ERL"), is a limited liability company

formed pursuant to the laws of the State of Oklahoma.

2.      Plaintiff, Rodney Alexander Topkov ("Mr. Topkov"), is an individual

residing at 106287 South Quail Valley Drive, McCloud, Lincoln County, Oklahoma. Mr.

Topkov is the sole managing member and partner of ERL.

3.      The State of Oklahoma ex rel. Allan Grubb District Attorney ("D.A.

Grubb"), in and for Lincoln County, District Attorney of District 23, State of Oklahoma,

is an Oklahoma state agency. During the period of time in question, D.A. Grubb was the

sitting District Attorney in and for Lincoln and Pottawatomie County. DA Grubb was a

1

duly appointed agent authorized to enforce the laws of the State of Oklahoma and acted under color of law at all times relevant to this Petition.

4.     Venue is proper pursuant to 12 O.S. § 131, 12 O.S. § 133, 12 O.S. § 139, and 12 O.S. § 1651.

## II.     FACTUAL ALLEGATIONS

5.     The Plaintiffs repeat and reallege the preceding paragraphs of this Petition as if they were fully set out here.

6.     Mr. Topkov owns real and personal property located at 106287 South Quail Valley Drive, McCloud, Lincoln County, Oklahoma.

7.     On February 20, 2019, Mr. Topkov formed ERL.

8.     Thereafter, Mr. Topkov, through ERL, sought and obtained the necessary permits, registrations, and licensure to operate a legal marijuana commercial grow business on the real property located at 106287 South Quail Valley Drive, McCloud, Lincoln County, Oklahoma.

9.     ERL has continuously maintained the permits, registration, and licensure necessary to operate its legal marijuana commercial grow business. Specifically:

a.     In September 2019, ERL obtained a three (3) year Sales Tax Permit (No. 167854869) from the Oklahoma Tax Commission for Pottawatomie County.

b.     In October 2020, the Oklahoma Medical Marijuana Authority ("OMMA") issued a one-year Commercial Processor License to ERL (No. PAAA-4JHH-5HTY). ERL has renewed said Commercial Processor License each year since.

c.    On November 10, 2020, the Oklahoma Bureau of Narcotics and Dangerous Drugs ("OBNDD") issued a Certificate of Registration to ERL (No. 67134). ERL has renewed said Certificate of Registration each year since.

d.    In March 2021, ERL began the process of obtaining an OBNDD Certificate of Compliance for OMMA Businesses. It (1) completed and submitted the necessary paperwork to the Lincoln County Clerk, and (2) made a $2,025.00 payment to the Lincoln County Treasurer for commission fees and flood plain fees. After meeting with the Lincoln County Commissioners, the Lincoln County Clerk approved, signed, and filed of record, ERL's Certificate of Compliance for OMMA.

10.    In July 2021, OMMA renewed and issued a Commercial Grower License to ERL (No. GAAA-4KTZ-YRRV). ERL has renewed said license each year since.

11.    After obtaining the necessary permits, registrations, and licensure to operate a legal marijuana commercial grow business on the real property located at 106287 South Quail Valley Drive, McCloud, Lincoln County, Oklahoma, Mr. Topkov began building and operating his legal business. The business was fully equipped with irrigation, electricity, generators, equipment, vehicles, marijuana plants, seeds, grow supplies, trailers, and all other necessary equipment to operate a successful marijuana grow business.

12.    At all times during the operation of the business, Mr. Topkov and ERL were in full compliance with the laws of the State of Oklahoma regarding operation of a legal marijuana commercial grow business.

13.    Neither Mr. Topkov nor ERL has been convicted of a nonviolent felony in the past two (2) years nor has Mr. Topkov or ERL been convicted of any other felony

3

within the past five (5) years. In order to be issued a Commercial Grower License and a Commercial Processor License, the above non-criminal history are requirements pursuant to OMMA Regulations and pursuant to Title 63 O.S. § 422 and Title 63 O.S. § 423.

14.     The District 23 Drug Task Force ("DTF 23"), like other drug task forces, is funded, in part, by federal funds administered by the Oklahoma District Attorneys Council. These Justice Assistance Grant ("JAG") task forces are under the supervision of individual district attorneys in the districts in which they operate. As such, D.A. Grubb was charged with supervising the DTF 23 at all times relevant to this Petition.

15.     On August 11, 2021, William Wheeler ("Mr. Wheeler"), an investigator with the DTF 23, obtained a search warrant permitting "a search" of the property located at 106287 South Quail Valley Drive, McCloud, Lincoln County, Oklahoma. The warrant authorized a search "and if the data be found to seize it and mak[e] a proper return to the court."

16.     Defendant Wheeler supported his request for a search warrant with an affidavit in which he stated that after conducting visual surveillance of the property and conducting inquiries, he ascertained that a grow operation was located at 106287 South Quail Valley Drive, McCloud, Lincoln County, Oklahoma, and that although the grow operation had an OMMA license, it had no OBNDD registration.

17.     Defendant Wheeler further asserted that he had probable cause to believe that certain tangible items were being concealed on the property including marijuana, drug paraphernalia, personal property which would identify the individual[s] in control and/or possession of the property, cell phones and computers which could store information

4

related to illegal drug operations, surveillance devices, items used for drug cultivation and ledgers detailing illegal drug operations.

18.    On August 12, 2021, without any prior notice to the Plaintiffs, D.A. Grubb, Wheeler, and other members of the DTF 23, executed the search warrant, and raided the Property.

19.    D.A. Grubb was physically present on the Property during the raid, personally viewed all components of the operations, and as the DTF 23 supervisor and in his law enforcement capacity, Defendant D.A. Grubb directly observed, controlled, directed, and acquiesced in the actions of other DTF 23 members during the raid.

20.    More than a dozen police vehicles containing numerous officers dressed in military style tactical gear participated in the raid. Additionally, other individuals with commercial dump trucks and trailers and heavy machinery, including earth moving machines, arrived on the real property.

21.    Law enforcement officers raided the property with assault rifles drawn and pointing directly at Mr. Topkov's employees who were present on the real property during the raid.

22.    Mr. Topkov's employees immediately informed law enforcement officers that the marijuana commercial grow business had a valid OMMA license and a valid OBNDD registration and was thus, fully legal.

23.    Mr. Topkov's employees informed law enforcement officers that the owner of the property, Mr. Topkov, who was not physically present on the day of the raid, personally maintained the digital copy of the OBNDD registration.

24.     Employees physically showed law enforcement officers ERL's OMMA license.

25.     Mr. Topkov sent the digital copy of the OBNDD registration to his manager present on the scene who showed it to D.A. Grubb, Wheeler, and agents of the DTF 23.

26.     D.A. Grubb, Wheeler and agents of the DTF 23 refused to believe the digital copy of the OBNDD registration was not fraudulent and refused to stand down.

27.     D.A. Grubb, Wheeler and members of the DTF 23 refused to contact OBNDD to verify the authenticity of the digital registration that was being shown to them.

28.     Since all it took was a telephone call to OBNDD headquarters to confirm the authenticity of the OBNDD registration, D.A. Grubb, Wheeler and members of the DTF 23 could have easily ascertained that ERL was a completely legal commercial grow operation before doing any destruction to the real and personal property and before doing any destruction to the marijuana commercial grow business.

29.     The Defendant intentionally refused to listen to or review evidence that was provided to them at the time of the raid by Plaintiffs' employees and by Plaintiff Topkov himself via verbal (cellular telephone communication) to D.A. Grubb and via digital communication (digital picture of a valid OBNDD registration) showing that it was a completely legal commercial grow operation.

30.     The Defendant responded to the employees and to Mr. Topkov that what they were shown was a fraud.

6

31.    OBNDD does not provide the registration holder with a physical hard copy of the registration. The registration comes from OBNDD to the registration holder in digital form only via e-mail.

32.    The Defendant was intent on its destructive mission while purposefully ignoring the Plaintiffs' rights and only after the destruction of Plaintiffs' property, did the Defendants admit while still on the property that they had made a mistake after they received a call from OBNDD informing them that ERL had a valid OBNDD registration.

33.    D.A. Grubb, Wheeler, and a member of the DTF 23 engaged directly with Mr. Topkov's employees during the raid.

34.    Mr. Topkov's employees physically saw and heard D.A. Grubb, Wheeler, and a member of the DTF 23 pointing and giving oral commands to law enforcement, other DTF 23 agents, and other individuals who were present, telling them to destroy the marijuana farm and personal property.

35.    Law enforcement, other DTF 23 agents, and other individuals acted upon and followed the pointing and oral commands given by D.A. Grubb, Wheeler, and a member of DTF 23, and began destroying the real and personal property of the Plaintiffs.

36.    At the scene, law enforcement communicated with each other through a radio communication system.

37.    At one point in time, after pleading to stop the destruction by Mr. Topkov to D.A. Grubb (via telephone), D.A. Grubb instructed the agents to stand down and stop the destruction. The instruction by D.A. Grubb was communicated by radio to the DTF 23 agents and other individuals who were spread out over the property.

38.     Mr. Topkov texted a digital picture of the OBNDD registration to the cellular telephone Mr. Grubb was holding. Mr. Topkov again begged D.A. Grubb to stop the destruction to his property, telling him that the OBNDD registration was real and authentic.

39.     D.A. Grubb began screaming at Mr. Topkov, calling him a criminal, telling him he was going to be arrested and that what he produced looks fake and was a fraud.

40.     D.A. Grub screamed at Mr. Topkov through the telephone that "WE ARE CUTTING YOUR SHIT DOWN."

41.     D.A. Grubb further stated to Mr. Topkov that he was seizing and going to forfeit all of Mr. Topkov's assets.

42.     D.A. Grubb hung up the phone with Mr. Topkov and then in front of Mr. Topkov's employees, shouted out "GET BACK TO WORK."

43.     As soon as D.A. Grubb shouted out "GET BACK TO WORK," the agents and other individuals in the immediate vicinity began destroying the real and personal property.

44.     Then D.A. Grubb, in front of Mr. Topkov's employees, instructed Wheeler to give the orders over the radio to the other DTF 23 agents and individuals who were spread out over the property, to continue the raid.

45.     Wheeler, in front of Mr. Topkov's employees, did as instructed and gave the orders to continue the raid over the radio.

46.     Once the orders were given over the radio, the DTF 23 agents and other individuals who were spread out over the property continued destroying the real and personal property and completely decimated the commercial grow business.

8

47.     Notwithstanding the employees' continued protests and efforts to convince law enforcement that the marijuana commercial grow business was legal, law enforcement officers continued to threaten the employees while yelling that the operation was illegal because it did not have the requisite OBNDD registration.

48.     Over Mr. Topkov and his employees' protests, law enforcement officers proceeded to destroy the real and personal property and completely destroy the legally operating marijuana commercial grow business.

49.     Even before the earth movers were removed from their trailers, law enforcement began uprooting and cutting down marijuana plants.

50.     After unloading the machinery, law enforcement officers and other individuals participating with them, drove the equipment to the west side of the property crushing plants and irrigation systems along their way

51.     Once to the west side of the property, law enforcement officers and other individuals participating with them, destroyed the farm's auto-flower/fresh frozen section – the heart of the commercial operation – which included plants in addition to infrastructure such as irrigation, other mechanical systems, stakes, t-posts, trellising systems, and other personal property.

52.     Law enforcement and other individuals used earth moving machines and bulldozed the entire west side of the property's auto-flower/fresh frozen section of the farm, completely destroying the same.

53.     Law enforcement officers helped themselves to and utilized a tractor belonging to Mr. Topkov to aid in the destruction.

9

54.     Law enforcement caused damage to Mr. Topkov's tractor.

55.     Additionally, officers ordered Mr. Topkov's employees to get on the ground and handcuffed them. Law enforcement kicked one employee while he was cuffed and lying prone on the ground.

56.     Law enforcement officers confiscated the employees' cell phones and attempted to search the content of the phones.

57.     Meanwhile, DTF 23-member law enforcement officers broke through the front door of Mr. Topkov's residence where he also housed several employees.

58.     Officers went from room to room ransacking Mr. Topkov's residence, causing significant damage to the living areas including but not limited to destruction of the front door, breaking cabinets, ripping up the window screen, breaking a window, taking off a bed mattress, moving furniture and household items, and completely trashing the residence.

59.     Finally, Wheeler and D.A. Grubb had a telephone conversation with OBNDD and confirmed that the marijuana commercial grow business had the requisite OBNDD registration.

60.     D.A. Grubb, Wheeler, and other members of the DTF 23 merely apologized, loaded the equipment they had brought to the property and left.

61.     Soon thereafter, local, state, and national press began reporting the incident. News sources interviewed Defendant D.A. Grubb and OBNDD agent Mark Woodward who both admitted that the marijuana commercial grow business was at all times legal.

62.     On information and belief, D.A. Grubb, Wheeler, and the DTF 23 conducted other raids against marijuana commercial grow businesses owned by racial and ethnic minorities and foreigners, while mostly leaving those operated by white owners untouched.

63.     On information and belief, D.A. Grubb, Wheeler, and the DTF 23 believed that Mr. Topkov's marijuana commercial grow business was owned by a foreigner.

## COUNT I
## Declaratory Judgment

64.     The Plaintiffs' repeat and reallege the preceding paragraphs in this Petition as if fully set forth in this Count.

65.     Plaintiffs, pursuant to *Title 12 O.S. § 1651 et sec.*, request the Court to enter a Declaratory Judgment as to which Oklahoma statute applies when the State of Oklahoma, peace officer, or other state agency cuts, burns, destroys, or eradicates marijuana pursuant to Oklahoma Law.

66.     The   Oklahoma   Uniform   Controlled   Dangerous   Substances   Act ("OUCDSA"), *63 O.S. § 2-503(A)*, provides in pertinent part, that certain property is subject to forfeiture if possessed in violation of the OUCDSA, *§ 2-503* is specifically subject to the procedures codified in *§ 2-506*. *Section 2-503* states that certain items are subject to forfeiture:

> 1. All controlled dangerous substances and synthetic controlled substances which have been manufactured, distributed, dispensed, acquired, concealed or possessed in violation of the Uniform Controlled Dangerous Substances Act;

> 2. All raw materials, products and equipment of any kind ..., which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing   or   exporting,   injecting,   ingesting,   inhaling,   or   otherwise

introducing into the human body any controlled dangerous substance or synthetic controlled substance in violation of the provisions of the Uniform Controlled Dangerous Substances Act;

....

4. All conveyances ... which are used to transport, conceal, or cultivate for the purpose of distribution as defined in the Uniform Controlled Dangerous Substances Act ....

....

8. All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenance or improvement thereto, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of the Uniform Controlled Dangerous Substances Act which is punishable by imprisonment for more than one (1) year, except that no property right, title or interest shall be forfeited pursuant to this paragraph, by reason of any act or omission established by the owner thereof to have been committed or omitted without the knowledge or consent of that owner; ....

....

D. All items forfeited in this section shall be forfeited under the procedures established in *Section 2-506* of this title....

(Emphasis added).

      67.    When law enforcement seizes property pursuant to *§ 2-503*, *Title 63 O.S. §*

*2-506* provides post-seizure notice and an opportunity to be heard prior to permanent

deprivation of the subject property. *Section 2-506* states:

....

B. Notice of seizure and intended forfeiture proceeding shall be filed in the office of the clerk of the district court for the county wherein such property is seized and shall be given all owners and parties in interest. Notwithstanding any other provision of law, no filing fees shall be assessed by the court clerk for the filing of any forfeiture action.

C. Notice shall be given by the agency seeking forfeiture according to one of the following methods:

1. Upon each owner or party in interest whose right, title or interest is of record in the Tax Commission, by mailing a copy of the notice by certified mail to the address as given upon the records of the Tax Commission;

2. Upon each owner or party in interest whose name and address is known to the attorney in the office of the agency prosecuting the action to recover unpaid fines, by mailing a copy of the notice by registered mail to the last-known address; or

3. Upon all other owners or interested parties, whose addresses are unknown, but who are believed to have an interest in the property, by one publication in a newspaper of general circulation in the county where the seizure was made.

D. Within forty-five (45) days after the mailing or publication of the notice, the owner of the property and any other party in interest or claimant may file a verified answer and claim to the property described in the notice of seizure and of the intended forfeiture proceeding.

E. If at the end of forty-five (45) days after the notice has been mailed or published there is no verified answer on file, the court shall hear evidence upon the fact of the unlawful use and shall order the property forfeited to the state, if such fact is proved....

F. If a verified answer is filed, the forfeiture proceeding shall be set for hearing....

68.    To seize, summarily forfeit and eradicate the Plaintiffs' legally grown medical marijuana and seeds, the State of Oklahoma through D.A. Grubb relied on *63 O.S. § 2-505(C)*, which states in pertinent part:

Species of plants from which controlled substances in Schedules I or II of the Uniform Controlled Dangerous Substances Act may be derived which have been planted or cultivated in violation of the Uniform Controlled Dangerous Substances Act ... may be seized by peace officers, summarily forfeited and, in lieu of the eradication procedures contained in Section 2-509 of this title, promptly cut and burned where seized or destroyed by applications of herbicides....

69.    Notwithstanding, *63 O.S. § 2-509(C)(1)* provides:

C. 1. Whenever any peace officer of the state shall receive information that any species of any such plants has been found growing on any private lands in the State of Oklahoma, the peace officer shall notify the sheriff and county commissioners of the county wherein such plants are found growing. Within

13

five (5) days of receipt of such notice, the county commissioners shall notify the owner or person in possession of such lands that such plants have been found growing on the lands and that the same must be destroyed or eradicated within fifteen (15) days. When the fifteen (15) days have elapsed, the reporting peace officer shall cause an investigation to be made of the aforesaid lands, and if any such plants be found growing thereon, the county commissioners shall cause the same to be destroyed or eradicated by either cutting and burning or by applications of herbicides....

## III.   STANDARDS FOR DECLARATORY JUDGMENT

70.     The Plaintiffs' repeat and reallege the preceding paragraphs in this Petition as if fully set forth herein.

71.     To invoke the Court's jurisdiction under the Declaratory Judgments Act § *1651* states:

(1) [T]here must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

*City of Blackwell v. Wooderson*, 2017 OK CIV APP 33, 2017 P.3d 491, 495 (citation omitted). A case is "justiciable" when it involves a "lively case or controversy between antagonistic demands." *Dean v. State ex rel. Doak*, 2012 OK CIV APP 105, 292 P.3d 58, 62. In this case, an actual controversy exists.

72.     At issue is whether peace officers were authorized to eradicate the medical marijuana without first providing notice of their intended eradication of the medical marijuana. The Defendant relies on one statutory provision, *63 O.S. § 2-505(C)*, to argue that the government was not required to give notice before eradicating the medical

marijuana. However, as the Plaintiffs have pointed out, *63 O.S. § 2-509(C)(1)* requires that notice be given prior to eradication. Clearly, a direct controversy exists between the Plaintiffs and the Defendant sufficient to invoke this Court's jurisdiction under *§ 1651*. Moreover, the Declaratory Judgments Act expressly empowers the Court to determine the construction or validity of any statute. *12 O.S. § 1651*.

73.     A justiciable controversary exists between the Plaintiffs and the Defendant that is definite and concrete.

74.     The controversary between the Plaintiffs and the Defendant concerns legal rights and obligations among the parties and their interests are adverse to one another.

75.     The Plaintiffs have a legal interest in the controversary as they have a protectable legal interest to their property pursuant to Oklahoma law, The United States Constitution and the Constitution of the State of Oklahoma.

76.     The controversy between the Plaintiffs and the Defendant is real and substantial so as to be capable of a decision granting or denying specific relief of a conclusive nature.

77.     The issue involved in the controversy is ripe for judicial determination as pending before this Court is Plaintiffs' action for Replevin, as set forth below in Count II of this Petition, and said action involves both of the above-named parties. Further, the Court will be in no better of a position six (6) months from now to make a ruling on the Motion for Declaratory Judgement as the controversy is not an issue of fact but an issue of conflicting statutory law.

## IV.   THE ACTUAL CONTROVERSY

78.   The Plaintiffs' repeat and reallege the preceding paragraphs in this Petition as if fully set forth herein.

79.   At issue is what statute applies when the State of Oklahoma (or other state agency) cuts, destroys, burns or eradicates marijuana. There are two (2) different statutes regarding this actual controversy that are conflicting and cannot be reconciled. They are both set forth in Title 63 of the Oklahoma Statutes Citation, specifically:

A. *Title 63 O.S. § 2-505(C); and*

B. *Title 63 O.S. § 2-509(C)(1).*

The above two Statues are irreconcilably conflicting as they both relate to the same subject, i.e., when a peace officer (or other state agency) cuts, destroys, burns or eradicates marijuana. One statute, *Title 63 O.S. § 2-505(C)* authorizes the immediate destruction of the marijuana plants and the second statute, *Title 63 O.S. § 2-509(C)(1)*, requires that prior to the destruction of the marijuana plants, the landowner must first be given notice (Due Process) and then a sequence of events must take place thereafter **prior** to the destruction of the marijuana plants.

80.   The Defendant is charged with enforcing the laws of Oklahoma and has alleged that the Plaintiffs violated the law. Further, Defendant contends that the seizure and destruction of the personal property was legal. The Plaintiffs contend that they did not violate the law and that the Defendant wrongfully seized and destroyed their personal property to wit: medical marijuana and seeds.

81.     Plaintiffs' legal position is that *Title 63 O.S. § 2-509(C)(1)* is the statute that controls and applies when the State of Oklahoma (peace officer) cuts, destroys, burns or eradicates marijuana.

82.     The Defendant's legal position is that *Title 63 O.S. § 2-505(C)* is the statute that controls and applies when the State of Oklahoma (peace officer) can cut, destroy, burn or eradicate marijuana.

83.     The above *Title 63 O.S. § 2-505(C)* states that a plant (marijuana) may be seized by peace officers, summarily forfeited (meaning instantly) and, in lieu of the eradication procedures contained in Section 2-509 of this title, be promptly cut and burned where seized or destroyed.

84.     In direct opposition to the above statute is *Title 63 O.S. § 2-509(C)(1)* which states **that in order for and prior to** a peace officer (or other state agency) being able to cut, burn, destroy or eradicate marijuana, there must first be a sequence of events that includes notice to the owner of the land (Due Process). After such notice has been given, then a specific period of time (15 days) must pass, prior to the destruction of the marijuana as follows:

> a.     When a peace officer receives information that marijuana plants are growing on private lands in the state of Oklahoma, the peace office shall notify the Sheriff and County Commissioners of the County wherein the plants are growing;
>
> b.     Within five days of receipt of the Notice from the peace officer, the County Commissioners shall notify the owner or person in possession of such lands that such plants have been found growing on the lands and that the same must be destroyed or eradicated within 15 days;

17

> c.    When the 15 days have elapsed, the reporting peace officer shall cause
> an investigation to be made of the aforesaid lands, and if any such
> plants be found growing thereon, the County Commissioners shall
> cause the same to be destroyed or eradicated by either cutting and
> burning or by applications of herbicides * * *.

85.    As one can see, the above two (2) statues are in direct contravention to each other. The first statute (*Title 63 O.S. § 2-505(C)*) states that the destruction of the marijuana may occur instantly. The second statute (*Title 63 O.S. § 2-509(C)(1)*) states that there has to be a sequence of events that includes notice (Due Process) that shall be given to the landowner or person in possession of the land prior to the destruction of the marijuana. Further, each statute refers to the other.

86.    *§ 2-505(C)* and *§ 2-509(C)(1)* Irreconcilably Conflict. Article V of the Act contains its enforcement provisions. The Act describes the property subject to forfeiture, which includes the "controlled dangerous substances" themselves. *63 O.S. § 2-503(A)(1)*. Peace officers "shall seize" property subject to forfeiture either pursuant to a valid arrest or search warrant, or if exigent circumstances provide probable cause to seize property. *63 O.S. § 2-504*.

87.    The Act also purports to govern how certain substances, once seized, are eradicated. First, *§ 2-505(A)* dictates that in certain circumstances items are "deemed contraband and *shall* be seized and summarily forfeited." (Emphasis added). Once seized, the Act contemplates that, in most instances, the property "shall be held as evidence until a forfeiture has been declared or release ordered...." *63 O.S. § 2-506(A)*.

88.    However, the Act provides that "species of plants from which controlled substances ... may be derived" are treated differently from other controlled substances –

they are subject to eradication, not just forfeiture. On the one hand, *§ 2-505(C)* of the Act

states, in pertinent part:

> Species of plants from which controlled substances in Schedules I or II of the Uniform Controlled Dangerous Substances Act may be derived which have been planted or cultivated in violation of the [Act], or of which the owners or cultivators are unknown, or which are wild growths, *may be* seized by peace officers, summarily forfeited and, in lieu of the eradication procedures contained in *Section 2-509* of this title, promptly cut and burned where seized or destroyed....

(Emphasis added). *Section 2-505(C)* uses the word **"may."** "'[M]ay generally denotes

permissive or discretional." *Indep. Sch. Dist. #52 of Okla. County v. Hofmeister*, 2020

OK56, 473 P.3d 475, 491. It *permits* an individual to take an action but does not *require* it.

It imposes no obligation whatsoever.

89.    On the other, *§ 2-509* states, in pertinent part:

A.    All species of plants from which controlled dangerous substances in Schedules I and II may be derived are hereby declared inimical to health and welfare of the public, and the intent of the Legislature is to control and eradicate these species of the plants in the State of Oklahoma.

....

C.1.    Whenever any peace officer of the state shall receive information that any species of any such plants has been found growing on any private lands in the State of Oklahoma, the peace officer *shall* notify the sheriff and county commissioners of the county wherein such plants are found growing. Within five (5) days of receipt of such notice, the county commissioners *shall* notify the owner or person in possession of such lands that such plants have been found growing on the lands and that the same must be destroyed or eradicated within fifteen (15) days. When the fifteen (15) days have elapsed, the reporting peace officer *shall* cause an investigation to be made of the aforesaid lands, and if any such plants be found growing thereon, the county commissioners *shall* cause the same to be destroyed or eradicated by either cutting and burning or by applications of herbicides....

....

G.    In lieu of the eradication procedures provided for in subsections B and C of this section, all species of plants from which controlled dangerous substances in Schedules I and II of the Uniform Controlled Dangerous

Substances Act may be derived, may be disposed of pursuant to the provisions of subsection C of Section 2-505 of this title.

(Emphasis added). *Section 2-509(C)(1)* uses the words *shall*. The word **"shall"** "is ordinarily interpreted as a command or mandate. *Indep. Sch. Dist. # 52 of Okla. County*, 473 P.3d at 491. **"Notify"** is defined as:

In legal proceedings, and in respect to public matters, this word is generally, if not universally, used as importing a notice given by some person, whose duty it was to give it, in some manner prescribed, and to some person entitled to receive it, or be notified.

*Black's Law Dictionary* __ ed., p. __.

90.     Statutes are to be construed to determine the intent of the Legislature. *W.R. Allison Enters., Inc. v CompSource Okla.,* 2013 OK 24, 301 P.3d 407, 411. Further, courts must construe statutes according to their plain and ordinary meaning. *Id.* In interpreting statutes, the Court must consider the statue as a whole, not just individual provisions. *Matter of I.T.S.,* 2021 OK 38, 490 P.3d 127, 132. The Court must avoid an interpretation which results in an absurdity. *White Star Petroleum, LLC v. MUFG Union Bank, N.A.,* 2020 OK 89, 480 P.3d 887, 890. "A statute will be given a construction, if possible, which renders every word operative, rather than one which make some words idle and meaningless; this interpretive principle applies to every word, phrase, and clause of the statute." *Hamilton v. Northfield Ins. Co.,* 2020 OK 28, 473 P.3d 22, 26.

91.     Any reasoned review of § 2-505(C) and § 2-509(C)(1) reveals they both relate to the exact same subject – eradication, after seizure, of species of plants from which dangerous controlled substances may be derived. The two types of eradication are triggered by the very same obligation to seize and the same procedure allowing a seizure– an arrest

20

or search warrant (obtained by demonstrating probable cause) or probable cause to act without a warrant. Both provisions apply under exactly the same circumstances.

92.    The same review demonstrates unequivocally that the statutory provisions irreconcilably conflict since one, § 2-509, **mandates** that notice be given to the landowner prior to eradication, i.e., requires pre-deprivation due process. Notwithstanding, the other, §2-505, **permits** the peace officer, in his or her unfettered discretion, to eradicate the plants immediately with no pre-deprivation notice or opportunity to be heard. That is, the Act both requires the peace officer to give notice, and, at the same time, gives him or her discretion not to.

## V.    BRIEF AND ARGUMENT

93.    The Plaintiffs' repeat and reallege the preceding paragraphs in this Petition as if fully set forth herein.

94.    A declaratory judgment is a binding judgment from a court defining the legal relationship between parties and their rights in a matter before the court.

95.    Both federal and state law provide for mechanisms by which litigants may seek declaratory relief from the courts. Specifically, the Federal Declaratory Judgment Act states that in a case of actual controversy within its jurisdiction, ". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *28 U.S.C. § 2201(a).*

21

96.     Similarly, Oklahoma has codified the Uniform Declaratory Judgment Act at *Title 12 O.S. § 1651 et seq.*, which states in cases involving an actual controversary, an action for Declaratory Judgment gives the District Court the authority to make a determination of the construction or validity of any statute.

97.     Pursuant to *Title 12 O.S. § 1652,* the District Court in an action for Declaratory Judgment has the power to determine the rights, status, or other legal relations to or part of a petition, counterclaim, or other pleading seeking other relief, and, when a party seeks other relief, a court may grant declaratory relief where appropriate.

98.     The Courts have made it clear that the first requisite of a proper case for Declaratory Judgment is an actual controversy. In *Gordon v. Followell*, 391 P.2d at 242, the Court stated in the first paragraph of its syllabus:

> *"In order to invoke the court's jurisdiction under our declaratory judgment act, there must be an actual, existing controversy between parties having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, potential or contingent dispute."* In further explanation of the requisites, including standing, of an "actual controversy" which must be the basis of the declaratory relief sought, the Court quoted the following summarization originally from Declaratory Judgments, Borchard, pages 26 and 27: *"The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination."*

*City of Blackwell v. Wooderson*, 2017 OK CIV APP 33, 2017 P.3d 491, 495 (citation omitted). A case is "justiciable" when it involves a "lively case or controversy between

antagonistic demands." *Dean v. State ex rel. Doak*, 2012 OK CIV APP 105, 292 P.3d 58, 62. In this case, an actual controversy exists.

## VI.    AS BETWEEN A MANDATORY PROVISION AND A PERMISSIVE PROVISION, THE MANDATORY CONTROLS AND GOVERNS

99.    The Plaintiffs' repeat and reallege the preceding paragraphs in this Petition as if fully set forth herein.

100.    When two (2) statutes are conflicting, Oklahoma has adopted the common law rule that the specific statute controls over the general statute. "A well-known canon of statutory construction states a specific statute controls a general statute on the same subject. This canon only applies if the two statutes conflict with one another when they may not be harmonized." *In the Matter of the Assessments for Tax Year 2012 of Certain Properties*, 2021 OK 7, ¶ 16, 481 P.3d 883, 893. Moreover, it is logical that a statute which **mandates** government action governs over a statute which **permits** government action under the exact same circumstances. Importantly, a peace officer cannot comply with the mandatory requirements of *§2-509 (C)(1)* if he or she, in fact, has unfettered discretion to act immediately without giving notice under *§2-505(C)*. *Section 2-505(C)'s* discretionary language renders the words "shall" – used four times in *§ 2-509(C)(1)* – completely meaningless.

101.    If there is a conflict between two statutory provisions — one of them a general statement and the other a specific statement — the court will apply the more specific statement over the general statement and in doing so, the Court looks to the specific language contained in each of the statutes in order to ascertain which statute is general and

23

which statute is specific. Applying this to the two (2) statues in question, it is easy to determine which one of the statutes is specific and which one is general.

102.   *Title 63 O.S. § 2-505(C)* uses the words **"may"** and **"in lieu of."** Said language is general. The word **"may"** means the same as "may or may not." Its nature is "permissive," not "mandatory." It permits an action to be taken, but does not require it. It imposes no obligation whatsoever. "'[M]ay' generally denotes permissive or discretional." *Indep. Sch. Dist. #52 of Okla. County v. Hofmeister*, 2020 OK 56, 473 P.3d 475, 491. It permits an individual to take an action but does not require it. It imposes no obligation whatsoever. The words **"in lieu of"** mean "instead of or in place of." *Title 63 O.S. § 2-505(C)* specifically states that: *"...or which are wild growths, **may** be seized by peace officers, summarily forfeited and, **in lieu of** the eradication procedures contained in Section 2-509 of this title, promptly cut and burned where seized or destroyed..."*

103.   On the other hand, *Title 63 O.S. § 2-509(C)(1)* uses the words **"shall"** and **"notify."** Said language is specific. The word **"shall"** means "mandatory" "required to" and "not permissive." Blacks Law Dictionary defines the word **"notify"** as:

> *"In legal proceedings, and in respect to public matters, this word is generally, if not universally, used as importing a notice given by some person, whose duty it was to give it, in some manner prescribed, and to some person entitled to receive it, or be notified."*

*Title 63 O.S. § 2-509(C)(1)* specifically states that *"...the peace officer **shall notify** the sheriff and county commissioners of the county wherein such plants are found growing. Within five (5) days of receipt of such notice, the county commissioners **shall notify** the owner or person in possession of such lands that such plants have been found growing...*

24

*the reporting peace officer* **shall** *cause an investigation to be made of the aforesaid lands, and if any such plants be found growing thereon, the county commissioners* **shall** *cause the same to be destroyed or eradicated by either cutting and burning…"*

104.    *Title 63 O.S. § 2-509(C)(1)* is clearly the statute which controls when a peace officer or other state agency cuts, destroys, burns or eradicates marijuana. It is the specific statute that controls because it uses the word **"shall"** four (4) times as opposed to *Title 63 O.S. § 2-505(C)* only using the words *"may"* and *"in lieu of."*

105.    *Title 63 O.S. § 2-509(C)(1)* is the specific statute that controls because it gives notice of due process whereas *Title 63 O.S. § 2-505(C)* does not. The peace officer is required to follow a mandate and, thus, cannot also exercise discretion.

106.    Moreover, *§ 2-505(C)* impermissibly leaves solely to peace officer's discretion – unrestricted by any statutory provision – whether to immediately destroy the dangerous controlled substance or to give the landowner notice and an opportunity to be heard before destroying the dangerous controlled substance. "[N]ecessary discretionary power should be properly confined, structured, and checked. It may be confined by the adoption of rules or statutes. It may be structured by stating findings and reasons, and following precedent, all of which are open to the public. It may be checked by administrative review or submission to the courts. Discretion which is unfettered, i.e. exercised without guiding rules in an ad hoc manner, will be stricken down." *Citicorp Sav. & Trust Co. v. Banking Bd. of State of Okla.*, 1985 OK 63, 704 P.2d 490, 494 (*Morton v. Ruiz*, 415 U.S. 199 (1974)).

107.    Notably, the Oklahoma Legislature enacted both *§ 2-505(C)* and *§ 2-509(C)* long before it enacted the Medical Marijuana and Patient Protection Act ("MMPPA"). Prior to the MMPPA, all plants from which dangerous controlled substance could be derived were *ipso facto* illegal. Now, however, the MMPPA legalizes the cultivation of marijuana. A statute which permits a peace officer to summarily destroy marijuana as suspected contraband without even a shred of due process runs the extremely high risk of destroying legal marijuana. For this reason, similar statutory schemes permitting the seizure of contraband consistently require the seizing peace officer to maintain the seized contraband in safekeeping until its legality is determined at which point destruction is permissible. *See, e.g., 68 O.S. § 360.7* (cigarettes); *21 O.S. § 973* (slot machines and punch boards); *3A O.S. § 426* (bingo faces, game sets, or breakopen tickets). Thus, *§ 2-505(C)* runs counter to the way in which the Legislature has customarily dealt with the forfeiture, seizure and destruction of suspected contraband. Further, the Fourth Amendment to the United States Constitution limits the government's power to seize property for purposes of forfeiture. *United States v. Good*, 510 U.S. 43, 49 (1993). The Fourteenth Amendment to the United States Constitution requires the government to provide notice and an opportunity to be heard prior to the seizure of real property, appurtenances to real property and certain personal property even though the property is suspected in the use of a drug offense. *Good*, 510 U.S. 43; *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). Where the government has lawfully seized property, reasonable notice must be given prior to final deprivation. *See Matthias v. Bingley*, 906 F.2d 1047, 1053 (5th Cir. 1990).

108.   Further, Oklahoma case law and Oklahoma statutory law directly addresses

the controversy in question. In the case of *State v. Stice*, ¶ 12, 288 P.3d 247, the Court

stated:

"¶12 *However, where an irreconcilable conflict exists between two statutes, **the
latter statute controls**.*"

"Oklahoma law [ ] provides a remedy for interpreting conflicting statutes where the
statutory language of the statutes cannot be reconciled. The latter statute controls.
***See, 75 O.S. § 22.*** The general rule of statutory construction is that the later-enacted
legislation controls over the earlier-enacted provisions. We find that in the case of
an irreconcilable conflict in statutory language, the later enacted statute modifies
the earlier statute, even where both statutory amendments were enacted in the same
Legislative session."

109.   *Title 75 O.S. § 22* deals with and is titled **Conflicting Provisions** and states

the following:

*"If the provisions of any code, title, chapter or article conflict with or contravene
the provisions of any former code, title, chapter or article, the provisions of the
latter code, title, chapter or article **must** prevail as to all matter and questions
arising thereunder out of the same subject matter."*

110.   Applying *Title 75 O.S. § 22* to each of the conflicting statutes, Title 63 O.S.

§ 2-505 was last codified and enacted on November 1, 2017. At that time, possession,

growing and selling medical marijuana was illegal in the State of Oklahoma. After

November 1, 2017, the possession, growing, and selling medical marijuana became legal

on June 26, 2018 (as the result of the votes of the public) and has remained legal since said

date. *Title 63 O.S. § 2-509* was last codified and enacted on November 1, 2018. Appling

Oklahoma law, *Title 63 O.S. § 2-509* must prevail as to all matters and questions arising

thereunder out of the same subject matter because it is the latter statute enacted. Therefore,

*Title 63 O.S. § 2-509(C)(1)* is the statute that applies and controls when a peace officer or other state agency cuts, destroys, burns or eradicates marijuana.

111.    Further, regardless of which statute was last enacted, Oklahoma law is clear that the statute that sets forth a specific requirement controls over a general statute even if the general statute was enacted later than the specific one. *State v. Woodward*, 737 P.2d 569, 570-71 (Okl.Cr. 1987).

112.    63 O.S. § 2-509(C)(1) applies such that Defendant was required to give notice and an opportunity to be heard before seizing and summarily forfeiting Plaintiffs' property, and to the extent that the OUCDSA permits summary forfeiture, it is unconstitutional pursuant to the Fourteenth Amendment to the United States Constitution and pursuant to Article II, Section II-2 and Article II, Section II-7 of the State of Oklahoma's Constitution.

## CONCLUSION

113.    Given that  *Title 63 O.S. § 2-509(C)(1)* is specific over the general statute of *Title 63 O.S. § 2-505(C)* and given that case law and *Title 75 O.S. § 22* provides that if there are conflicting statutes that cannot be reconciled, the latter statute controls, it is clear that the controlling statute is *Title 63 O.S. § 2-509(C)(1)* and not *Title 63 O.S. § 2-505(C).*

114.    Further, and most importantly, given that one statute affords an individual or company due process and the other does not, the statute affording due process clearly controls as a fundamental constitutional right pursuant to the Fourteenth Amendment to the United States Constitution and pursuant to Article II, Section 11-2 and Article II, Section II-7 of the State of Oklahoma's Constitution.

115.   Plaintiffs request the Court to enter a Declaratory Judgment that *Title 63 O.S.* *§ 2-509(C)(1)* is the applicable statute that applies to the eradication of marijuana following forfeiture and seizure.

116.   To the extent that the OUCDSA permits summary forfeiture, it is unconstitutional pursuant to the Fourteenth Amendment to the United States Constitution and pursuant to Article II, Section II-2 and Article II, Section II-7 of the State of Oklahoma's Constitution.

117.   Plaintiffs are entitled to their attorney fees and costs of the action.

**WHEREFORE,** Plaintiffs respectfully request the Court to enter judgment declaring that *Title 63 O.S. § 2-509(C)(1)* is the sole authority permitting a peace officer, or other state agency to cut, burn, destroy, or eradicate marijuana, award Plaintiffs their attorney fees and costs of the action, and for such other and further relief to which they may be justly entitled.

## COUNT II
### Replevin

118.   The Plaintiffs repeat and reallege the preceding paragraphs in this Petition as if fully set forth in this Count.

119.   The Plaintiffs bring this action for Replevin pursuant to *Title 12 O.S. § 1580.*

120.   The Plaintiffs own the marijuana destroyed – summarily and permanently seized and forfeited – by the State of Oklahoma through D.A. Grubb, DTF 23, Wheeler, and others.

121.   The Defendant State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma, wrongfully seized and summarily and permanently forfeited the medical marijuana plants and seeds.

122.   That pursuant to *Title 12 O.S. § 1571*, the property in question was not taken in execution on any order or judgment against said plaintiffs, or for the payment of any tax, fine or amercement assessed against Plaintiffs, or by virtue of an order of delivery issued under this chapter, or any other mesne or final process issued against said Plaintiffs.

123.   After seizing and destroying the medical marijuana and marijuana seeds owned by the Plaintiffs, the Defendant State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma admitted that the marijuana commercial grow business was legal and had a valid OBNDD registration. Mark Woodward of OBNDD further admitted that the marijuana commercial grow business was legal and had a valid OBNDD registration.

124.   Replevin lies to recover property which held under a void process.

125.   The Plaintiffs are entitled to possession of the marijuana plants and seeds wrongfully seized, summarily forfeited and destroyed.

126.   Pursuant to *Title 12 O.S. § 1580*, "[i]n an action to recover possession of personal property, judgment for plaintiff may be for ... the value thereof in case delivery cannot be had, and of damages for the detention."

127.   The estimated value of the taking, withholding, and destroyed marijuana plants and seeds is $10,000,000 (Ten Million Dollars).

30

128.   The estimated damages for the detention of the marijuana plants and seeds is $1,400,000 (One Million Four Hundred Thousand Dollars).

129.   Plaintiffs are entitled to their attorney fees and costs of the action pursuant to *Title 12 O.S. § 1580.*

**WHEREFORE,** Plaintiffs pray for judgment against the Defendant State of Oklahoma ex rel. Allan Grubb, District Attorney, in and for Lincoln County, District Attorney of District 23, State of Oklahoma, for Replevin, in excess of the sum of $75,000, together with interest, attorney fees and costs, and for such other and further relief to which they may be justly entitled.

**JURY TRIAL DEMANDED ON PLAINTIFFS REPLEVIN CLAIM**

**ATTORNEY LIEN CLAIMED**

Respectfully submitted,

Thomas Goldman, OBA #19105
Edward Goldman, OBA #3437
Robert Goldman, OBA #3439
GOLDMAN LAW PLLC
222 Northwest 13th Street
Oklahoma City, OK 73103
405/524-3403 Tel
405/423-2108 Fax
tom@goldmanlawokc.com
ed@goldmanlawokc.com
robert@goldmanlawokc.com

and

31

Donald E. Gies, III, OBA #33889
GIES LAW FIRM PLLC
1708 N. Gatewood Ave., Suite B
Oklahoma City, OK 73106
405/281-0276 Tel  405/421-0167 Fax
donald.gies@dg3law.com
**ATTORNEYS FOR PLAINTIFFS**

STATE OF OKLAHOMA        )
                         ) ss.    VERIFICATION
COUNTY OF OKLAHOMA       )

I **RODNEY ALEXANDER TOPKOV**, of lawful age and upon being first duly sworn, state that I am the Petitioner in the above and foregoing matter; that I am the sole managing member and partner of Earth Research Labs, LLC; that I have read the above Petition and that the facts therein stated are true and correct to my best knowledge and belief.


**RODNEY ALEXANDER TOPKOV**


Earth Research Labs, LLC

by
**RODNEY ALEXANDER TOPKOV**


Subscribed and sworn to before me this ___ day of May 2023.

My commission expires

Notary Public

33